# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CAROL MacDOUGALL,  )<br>  )<br>      *Plaintiff*  )<br>  )<br>v.  )<br>  )<br>MICHAEL J. ASTRUE,  )<br>**Commissioner of Social Security,**  )<br>  )<br>      *Defendant*  ) | No. 2:10-cv-400-GZS |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in (i) failing to find a severe impairment of fibromyalgia or analyze her obesity, (ii) rejecting the physical residual functional capacity ("RFC") opinion of treating rheumatologist Robert A. Sylvester, M.D., (iii) omitting to adopt a so-called "sit-stand option," and (iv) arriving at a flawed mental RFC determination. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 15) at 5-23.[2] I recommend that the decision of the commissioner be affirmed.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] At oral argument, the plaintiff's counsel withdrew an additional argument made in the statement of errors: that the administrative law judge had erred in accepting vocational expert testimony predicated on numbers of jobs for occupational groupings rather than for specific occupations. *See* Statement of Errors at 3-5.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of hepatitis C, a depressive disorder, a personality disorder, failed back syndrome, chronic low back pain, and right shoulder impingement, Finding 3, Record at 17; that she had the RFC to lift and carry 10 pounds, sit for up to six hours in an eight-hour workday, stand or walk for up to six hours in an eight-hour workday, and occasionally balance, stoop, kneel, crouch, and crawl, needed to avoid climbing ropes, ladders, and scaffolds and avoid cold temperature extremes and irregular and sloping walking surfaces, could perform frequent overhead work on the right with no limits on the left, and could perform moderately detailed unskilled work with occasional changes in the work setting and occasional to brief intermittent contact with the public, Finding 5, *id*. at 19; that, considering her age (43 years old, defined as a younger individual, on the alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 22-23; and that she, therefore, was not disabled from December 1, 2007, her alleged disability onset date, through May 28, 2010, the date of the decision, Finding 11, *id*. at 24.[3] The Decision Review Board found no reason to disturb the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

---

[3] The plaintiff is insured for purposes of SSD benefits through June 30, 2012. *See* Finding 1, Record at 17.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Handling of Dr. Sylvester's Evidence

At oral argument, while not conceding any points of error apart from the vocational evidence argument that he expressly withdrew, *see* n.2 *supra*, the plaintiff's counsel focused on the administrative law judge's handling of Dr. Sylvester's evidence, specifically, his failure to find a severe impairment of fibromyalgia and his rejection of Dr. Sylvester's RFC opinion. *See* Statement of Errors at 6-10, 12-17. I turn first to those related arguments.

### 1. Failure To Find Fibromyalgia Impairment

The administrative law judge declined to find that the plaintiff had a medically determinable impairment of fibromyalgia, reasoning that there was "no evidence to prove that the required 11 out of 18 trigger points were noted." Record at 18. He explained: "An assessment submitted by Dr. Sylvester (Exhibit 30F), demonstrates only 5 trigger points; therefore, the undersigned finds the diagnosis of fibromyalgia not fully supported in the medical evidence and will consider it a nonsevere impairment." *Id.*[4]

As the plaintiff points out, this analysis is flawed. *See* Statement of Errors at 6-10. The administrative law judge relied on virtually illegible handwritten notes in Dr. Sylvester's RFC opinion (Exhibit 30F), *see* Record at 653, while omitting any mention of his underlying progress notes, at least one of which demonstrates findings of more than 11 tender points, *see id*. at 558.

Nonetheless, as counsel for the commissioner observed at oral argument, this court has held that "an error at Step 2 is uniformly considered harmless, and thus not to require remand,

---

[4] Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause." Stedman's Medical Dictionary 671 (27th ed. 2000). "The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." *Id.*

4

unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue,* Civil No. 09–220–B–W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). She argued that because, at Step 4, the administrative law judge properly discounted Dr. Sylvester's RFC opinion, the failure to find a severe impairment of fibromyalgia was harmless. I agree.

The plaintiff relies on certain of Dr. Sylvester's RFC findings to prove that the administrative law judge committed reversible error in rejecting the fibromyalgia diagnosis and the RFC opinion itself. Dr. Sylvester found, in relevant part, that the plaintiff could never stoop and could only occasionally reach, handle, finger, or feel. *See* Record at 653-54.[5] The plaintiff correctly points out that the vocational expert present at her hearing testified that a limitation to only occasional reaching would preclude the performance of the three jobs on which the administrative law judge relied at Step 5, those of addresser, order clerk, and call-out operator. *See* Statement of Errors at 17; Record at 23, 72. Further, the vocational expert testified that a limitation to only occasional handling, fingering, and feeling would impact all of those jobs. *See* Record at 72-73. In addition, as the plaintiff notes, Social Security Ruling 96-9p ("SSR 96-9p") indicates that an inability to stoop significantly erodes the unskilled sedentary occupational base. *See* Statement of Errors at 17; SSR 96-9p, reprinted in *West's Social Security Reporting Service Rulings 1983–1991* (Supp. 2011), at 159. All three jobs on which the administrative law judge relied are unskilled, sedentary jobs. *See* Record at 23, 69.

The record contains no expert physical RFC opinion, apart from that of Dr. Sylvester, indicating that the plaintiff could not stoop and could only occasionally reach, handle, finger, or

---

[5] It is not clear whether Dr. Sylvester ascribed the postural limitations that he found, including an inability to stoop, in part or in whole to fibromyalgia. *See* Record at 653. I will assume, for the sake of argument, that he did. He does appear to have ascribed his assessed manipulative limitations to tenderness in the plaintiff's elbows and shoulders, *see id*. at 654, which were among his tender, or trigger, point findings, *see id*. at 558.

feel. *Compare id*. at 653-54 (Sylvester RFC opinion) *with id*. at 346-47 (opinion of Disability Determination Services ("DDS") nonexamining consultant Donald Trumbull, M.D., that plaintiff could occasionally stoop and had no limitations in reaching in all directions, handling, fingering, or feeling), 564 (statement of DDS examining consultant Renato Medrano, M.D., that the plaintiff had "no restriction to do work-related activities such as sitting, standing, walking, carrying, handling objects, hearing, speaking and traveling[,]" although she had a "restriction to do work-related activities that require bending and lifting using [her] right arm"), 582-83 (opinion of DDS nonexamining consultant Richard T. Chamberlin, M.D., that plaintiff could occasionally stoop, could reach in all directions except that she needed to avoid frequent overhead work on the right, and had no limitations in handling, fingering, or feeling), 640-41 (opinion of treating physician Daniel Morgenstern, M.D., that plaintiff could occasionally stoop and had no limitations in reaching in all directions, handling, fingering, or feeling).[6]

Thus, the question of whether the administrative law judge committed reversible error in rejecting the fibromyalgia diagnosis turns on whether he supportably rejected the Sylvester RFC opinion.

### 2. Rejection of Sylvester RFC Opinion

The administrative law judge explained his rejection of the Sylvester RFC opinion as follows:

> It is not apparent from Dr. Sylvester's office records that the extreme limitations placed on the [plaintiff] have an objective foundation. The [plaintiff's] activities, such as traveling and work, do not demonstrate someone who is certainly . . . limited due to pain. Someone in pain would have significant limitations in their ability to sit, stand, or walk. In this case, the [plaintiff] had no[] limits.

---

[6] The administrative law judge rejected the Sylvester RFC opinion and gave "considerable weight" to the Medrano opinion and "great weight" to the Morgenstern RFC opinion. *See* Record at 21-22. He did not mention the Trumbull and Chamberlin RFC opinions. *See id.*

6

*Id*. at 21.

The plaintiff contends that, in so stating, the administrative law judge failed to supply the requisite "good reasons" for rejecting a treating source opinion pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927(d), as recently glossed by the First Circuit in *Soto-Cedeño v. Astrue*, 380 Fed. Appx. 1 (1st Cir. 2010), and *Johnson v. Astrue*, 597 F.3d 409 (1st Cir. 2009). *See* Statement of Errors at 13-16. She argues that (i) the assessed limitations, which are similar in many respects to those found by Dr. Morgenstern, were not fairly characterized as "extreme," (ii) Dr. Sylvester identified a basis for the plaintiff's pain complaints and substantiated them by his examinations and in his notes, and (iii) the administrative law judge exceeded the bounds of his competence, as a layperson, in making the unsupported observation that someone in pain would have significant limitations in her ability to sit, stand, or walk. *See id*. at 12-16. With respect to the second point, the plaintiff's counsel emphasized at oral argument that, to the extent that the plaintiff's restrictions stemmed from fibromyalgia, there are no objective findings apart from tender points. *See, e.g., Johnson*, 597 F.3d at 412 ("[S]ince trigger points *are* the only 'objective' signs of fibromyalgia, the ALJ effectively was requiring objective evidence beyond the clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines, and this, we think, was error.") (citation and internal punctuation omitted) (emphasis in original).

At oral argument, counsel for the commissioner pointed out that, as concerns exertional limitations, that is, the capacities to lift/carry, sit, stand, and walk, the RFC finding of the administrative law judge is actually consistent with that of Dr. Sylvester. *Compare* Finding 5, Record at 19 *with id*. at 652-53. She contended that the administrative law judge properly declined to adopt Dr. Sylvester's nonexertional postural and manipulative limitations on the

7

basis, *inter alia*, of inconsistencies with the plaintiff's reported activities, including her reported travel/travel plans and the demands of her part-time work at a laundromat, which she continued to perform for about 14 hours a week, as of her hearing date. *See id*. at 38. Counsel noted, for example, that whereas Dr. Sylvester indicated that the plaintiff could never stoop, *see id*. at 653, the plaintiff reported that she stooped all of the time at the laundromat job, *see id*. at 248, and whereas Dr. Sylvester indicated that the plaintiff could only occasionally reach, handle, finger, or feel, *see id*. at 654, the plaintiff described the laundromat job as entailing washing the floor, mopping, taking out the trash, cleaning the bathroom, washing down the machines, washing and folding clothes for customers, and making change, *see id*. at 248, suggesting a substantial usage of her hands and arms. Counsel added that certain of the plaintiff's reported travel or travel plans, including reports to treating sources that she was going to North Carolina to get married, had flown to Virginia, and was going on a cruise to Alaska, *see id*. at 22, 585, 621, 629, were inconsistent with the Sylvester RFC opinion, including the purported lack of ability to stoop.

This argument is persuasive. Even setting aside the administrative law judge's other rationales for discounting the Sylvester RFC opinion, his citation of inconsistencies between that opinion and the plaintiff's reported activities constituted a good and valid reason for declining to adopt that opinion and resolving conflicts in favor of the less restrictive RFC assessment of a different treating source, Dr. Morgenstern, together with the findings of an examining source, Dr. Medrano.[7]

---

[7] This case is distinguishable from both *Johnson* and *Soto-Cedeño*. In *Johnson*, the administrative law judge had not provided a single persuasive reason for rejecting a treating rheumatologist's assessment of restrictions attributable to fibromyalgia, and the First Circuit reasoned that two competing RFC assessments by non-examining consultants could not stand as substantial evidence of the claimant's RFC in circumstances in which one failed to cite the fibromyalgia diagnosis and the other misunderstood that the condition is unsupported by "objective" findings apart from tender points. *See Johnson*, 597 F.3d at 411-13. In this case, the administrative law judge did proffer a good reason for rejecting the Sylvester opinion and relied on two expert RFC opinions that the plaintiff does not suggest fail to constitute substantial evidence of her RFC. *See* Statement of Errors at 12-18. In *Soto-Cedeño*, the First Circuit found that a treating physician's
*(continued on next page)*

I briefly address three additional points raised in the plaintiff's statement of errors with respect to the administrative law judge's handling of the Sylvester RFC opinion: that he erred in (i) rejecting that opinion on the basis of inconsistencies with Dr. Sylvester's treatment notes without the benefit of expert advice, (ii) failing to determine whether, if the opinion were not given controlling weight, it should have been given great weight, and (iii) failing to recontact Dr. Sylvester to determine the bases for his opinion. *See* Statement of Errors at 16-17.

The plaintiff cites four cases in support of the first point: *Manso-Pizarro*, *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327 (1st Cir. 1990), *Eshelman v. Astrue*, No. 06-107-B-W, 2007 WL 2021909 (D. Me. July 11, 2007) (rec. dec., *aff'd* July 31, 2007), and *Hall-Grover v. Barnhart*, No. 03-329-P-C, 2004 WL 1529283 (D. Me. Apr. 30, 2004) (rec. dec., *aff'd* May 24, 2004). *See id.* at 16. None of the cited cases stands for the proposition that an administrative law judge must obtain expert assistance to determine whether a treating source's RFC opinion is unsupported by his or her treatment notes. Three of the cited cases stand, instead, for the proposition that an administrative law judge may not determine a claimant's RFC based on the raw medical evidence unless a common-sense judgment about functional capacity can be made. *See Manso-Pizarro*, 76 F.3d at 17-18; *Gordils*, 921 F.2d at 329; *Eshelman*, 2007 WL 2021909, at *3. In this case, the administrative law judge did not determine the plaintiff's RFC based on raw medical evidence. Rather, he resolved conflicts among expert RFC opinions.

---

RFC opinion was improperly rejected on the basis that there were no progress notes of record despite the fact that the physician had described the basis for his opinion and, to the extent that the administrative law judge deemed the opinion inadequately supported, he should have obtained the underlying notes. *See Soto-Cedeño*, 380 Fed. Appx. at 3. The First Circuit also found that the administrative law judge had unreasonably (i) characterized the opinion as inconsistent with other medical evidence of record in circumstances in which two examining consultants on whose opinions he relied had examined the claimant more than two years earlier and (ii) found the opinion inconsistent with the plaintiff's own statements and activities of daily living. *See id.* at 3-4. In this case, by contrast, the administrative law judge reasonably deemed the plaintiff's activities inconsistent with the Sylvester RFC opinion and chose to credit competing expert RFC opinions, one of which was authored approximately five months prior to that of Dr. Sylvester, and one of which was authored at approximately the same time. *Compare* Record at 655 *with id.* at 564, 642.

9

In the fourth cited case, the court held that an administrative law judge had failed to supply a good reason for discounting a treating source RFC opinion in circumstances in which the administrative law judge had not explained how the source's treating notes failed to support his conclusions. *See Hall-Grover*, 2004 WL 1529283, at *5. Here, the administrative law judge detailed the reasons why Dr. Sylvester's objective findings suggested only mild limitations. *See* Record at 21. While his finding that the fibromyalgia diagnosis was uncorroborated is not well-taken, he required no expert assistance to conclude that x-rays of the plaintiff's spine and shoulder revealed only mild abnormalities. *See id*.

Nor did the administrative law judge err in failing to consider whether the Sylvester opinion should be accorded "greatest," if not "controlling," weight. He resolved conflicts among conflicting RFC opinions, supportably choosing those of Drs. Medrano and Morgenstern over that of Dr. Sylvester.

Nor, finally, did the administrative law judge have a duty to recontact Dr. Sylvester in the circumstances of this case. The duty to recontact a treating physician for clarification as to an RFC opinion is triggered only when (i) "the evidence does not support a treating source's opinion[,]" and (ii) "the adjudicator cannot ascertain the basis of the opinion from the case record[.]" *See* Social Security Ruling 96–5p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2011) ("SSR 96–5p"), at 127; *see also, e.g., Alejandro v. Barnhart,* 291 F. Supp.2d 497, 512 (S.D. Tex. 2003) ( "SSR 96–5p does not say that ALJs must recontact a treating physician whenever the record as a whole (or a treating physician's particular contribution to the record) fails to support his opinions. To the contrary, SSR 96–5p requires recontact solely when both (a) the record fails to support a treating source's opinion, and (b) the basis of the treating source's opinion is unascertainable from the record. The ALJ does not

express confusion regarding the basis of Dr. Igoa's opinion; instead, she concludes that the purported basis for his opinion does not lend any support to said opinion. This distinction is dispositive[.]") (citation omitted). Here, as in *Alejandro*, the administrative law judge did not express confusion regarding the bases for Dr. Sylvester's opinion but, rather, found it unsupported by the medical and other evidence of record. *See* Record at 21.

In any event, a default in the duty to recontact is reversible error not only when an adjudicator cannot ascertain the basis of a treating source's opinion from the case record but also when that record is inadequate to make a determination of disability. *See, e.g., Frost v. Barnhart,* No. 03-215-P-H, 2004 WL 1529286, at *11 (D. Me. May 7, 2004) (rec. dec., *aff'd* June 3, 2004). The record was adequate for that purpose in this case.

### B. Other Points of Error

#### 1. Ignoring Obesity

The plaintiff complains that the administrative law judge transgressed Social Security Ruling 02-1p ("SSR 02-1p") by failing to analyze whether her obesity was a medically determinable impairment and, if so, whether it was severe. *See* Statement of Errors at 10-12. She points out that her attorney raised the issue of obesity in his hearing brief. *See id.* at 11 n.14. She posits that the error is particularly significant because she was found to suffer from musculoskeletal disorders, which SSR 02-1p notes are often complicated by severe obesity. *See id.* at 12.

Nonetheless, the plaintiff does not explain how, had obesity been taken into account, it would have made any difference. *See id.* at 10-12. She identifies no restrictions or limitations that were omitted that would have exceeded those already found on the basis of her other impairments, including musculoskeletal impairments. *See id.* That is an inadequate showing for reversal and

11

remand. *See, e.g., Drew v. Astrue*, Civil No. 09-363-B-W, 2010 WL 1946335, at *4-*5 (D. Me. May 12, 2010) (rec. dec., *aff'd* June 4, 2010); *Bolduc,* 2010 WL 276280, at *4 n.3.

## 2. Failure To Adopt Sit-Stand Option

The two DDS nonexamining consultants whose RFC opinions are of record, Drs. Chamberlin and Trumbull, checked boxes indicating that the plaintiff required a sit-stand option. *See* Record at 345, 581. The plaintiff faults the administrative law judge for failing even to address those opinions despite "inconsistently" criticizing Dr. Sylvester's opinion based on his failure to find sitting, standing, or walking restrictions. *See* Statement of Errors at 17-18. She argues that the error was not harmless because a vocational expert present at the plaintiff's hearing testified that a sit-stand option would preclude the three jobs on which the administrative law judge ultimately relied in support of his Step 5 finding. *See id.* at 18.

As counsel for the commissioner conceded at oral argument, the administrative law judge erred in ignoring the DDS consultants' opinions. *See* 20 C.F.R. §§ 404.1527(f)(2)(i)-(ii), 416.927(f)(2)(i)-(ii) (directing administrative law judges to "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence[,]" evaluate them using the same factors used to assess treating source opinions, and explain the weight accorded them).

Nonetheless, as counsel for the commissioner argued, the error is harmless because the ultimate RFC finding is supported by substantial evidence in the form of the Medrano and Morgenstern RFC opinions, neither of which assessed a need for a sit-stand option. *See* Record at 564, 640; *see also, e.g., Robinson v. Astrue*, Civil No. 09-629-B-W, 2010 WL 4365755, at *2-*3 (D. Me. Oct. 27, 2010) (rec. dec., *aff'd* Dec. 3, 2010) (failure to address treating physician RFC opinion

12

was harmless error in circumstance in which there was directly conflicting RFC opinion evidence on which the administrative law judge was entitled to rely).

### 3. Omission of Two-Hour Block "Limitation" in Mental RFC Finding

The administrative law judge gave considerable weight to the psychological report of a DDS consulting examiner, Roger S. Zimmerman, Ph.D., and adopted *sub silentio* a mental RFC assessment by DDS nonexamining consultant Lewis F. Lester, Ph.D., arrived at with the benefit of the Zimmerman report. *See id.* at 20, 353-57 (Zimmerman report); 373-75 (Lester RFC opinion); *compare* Finding 5, *id.* at 19 (plaintiff retained RFC to "perform simple to moderately detailed unskilled work with occasional changes in the work setting with occasional to brief intermittent contact with the public") *with id.* at 375 (opinion of Dr. Lester that plaintiff could "understand & remember simple & moderately detailed tasks & procedures[,]" could "be reliable & sustain 2-hour blocks at simple & some moderately detailed tasks at a consistent pace over a normal work day/week[,]" could not "interact with the public on a continuous basis . . . but [could] have brief, intermittent public contact[,]" and could "adapt to occasional and routine changes"). *See also id.* at 74-75 (conveying hypothetical question containing mental portion of RFC to vocational expert).

The plaintiff complains that the administrative law judge omitted a restriction that this court has in the past deemed "significant," the limitation to two-hour blocks. *See* Statement of Errors at 19-20 (citing *Prescott v. Astrue*, Civil No. 09-23-B-W, 2009 WL 3148731 (D. Me. Sept. 30, 2009) (rec. dec., *aff'd* Nov. 5, 2009); *Conley v. Astrue*, Civil No. 08-202-P-S, 2009 WL 214557 (D. Me. Jan. 28, 2009) (rec. dec., *aff'd* Feb. 18, 2009).

As counsel for the commissioner pointed out at oral argument, following the filing of the instant statement of errors, this court issued a decision that disposes of this point adversely to the plaintiff, *Baker v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00167-JAW, 2011 WL 1298694 (D. Me.

Mar. 31, 2011) (rec. dec., *aff'd* Apr. 19, 2011). In *Baker*, this court construed a nearly identically worded restriction by the same consultant, Dr. Lester, not as a "limitation" but as a reiteration of the regulatory principle that "the mental abilities needed for any job include the ability to understand, remember, and carry out simple instructions by, among other things, maintaining concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." *Baker*, 2011 WL 1298694, at *4 (citation and internal quotation marks omitted). The court observed:

> The significance is that Dr. Lester found Baker to be capable of satisfying the mental requirements of simple work. Dr. Lester found, in effect, that Baker can concentrate on and persist with simple tasks all day, five days per week, understanding that there will be regular breaks. Dr. Lester was not prescribing Baker's maximum duties or his minimum break period. He was simply alluding to a regulatory presumption about the mental demands of simple work.

*Id*.

The omission of any reference to the "two-hour block" portion of Dr. Lester's mental RFC finding thus is inconsequential.

### 4. Rejection of Mental RFC Opinion of Treating Social Worker

The plaintiff engaged in mental health counseling with social worker Anna Agell on an intermittent basis beginning in December 2006. *See* Record at 626. The most recent progress note of record is dated January 26, 2010, *see id*. at 621, approximately three months prior to the plaintiff's April 30, 2010, hearing. Agell completed a mental RFC opinion dated April 14, 2010, in which she assessed marked restriction in the plaintiff's ability to maintain attention and concentration sufficient to perform work tasks throughout an eight-hour workday, and marked restriction in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See id*. at 637-38.

The administrative law judge rejected that opinion on the bases that Agell was not an acceptable medical source but, even if she were, her opinion was inconsistent with the content of her own office records and reduced the plaintiff's credibility, given her observations that the plaintiff's affect was not always congruent with her reported mood and that the plaintiff was "probably not completely honest about what is going on in her life." *Id.* at 20-21. The administrative law judge also observed, in the context of discussing Agell, that she had written an earlier letter, dated October 8, 2009, in which she stated that she believed the plaintiff could carry out job instructions, if she were in a supportive, non-physically taxing workplace. *See id.* at 20.

The plaintiff faults the rejection of the Agell mental RFC opinion on the bases that (i) pursuant to Social Security Ruling 06-03p ("SSR 06-03p"), the fact that someone is not an "acceptable medical source" does not preclude adoption of her opinion, (ii) the views expressed in October 2009 are not inconsistent with those expressed in April 2010, and (iii) the fact that Agell noted that the plaintiff was not completely honest did not undercut the validity of Agell's own views. *See* Statement of Errors at 21-22.

A social worker is not an "acceptable medical source" whose opinion can be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011), at 329. Yet, the opinion of a non-acceptable medical source such as Agell must be considered, *see id.* at 330, with the adjudicator explaining the weight given to the opinion or otherwise "ensur[ing] that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at 333.

15

That dictate was followed here. As counsel for the commissioner observed at oral argument, the administrative law judge supportably deemed Agell's progress notes, which do not reflect the plaintiff's marked difficulty with attention and concentration, inconsistent with Agell's April 2010 mental RFC opinion. *See, e.g.,* Record at 496, 505-06.

The administrative law judge committed no error in rejecting the Agell mental RFC opinion.

### 5. Failure To Reflect Episodes of Decompensation in Mental RFC

At Step 3, the administrative law judge found, consistent with the Psychiatric Review Technique Form ("PRTF") finding of DDS nonexamining consultant Brenda Sawyer, Ph.D., that the plaintiff had experienced one to two episodes of decompensation. *Compare id*. at 18 *with id*. at 576. At Step 4, he adopted a mental RFC consistent with that of a second DDS nonexamining consultant, Dr. Lester, *compare* Finding 5, *id*. at 19 *with id*. at 375, who had indicated on his PRTF that the plaintiff had suffered no episodes of decompensation, *see id*. at 369.

The plaintiff contends that the administrative law judge erred in not factoring into his RFC determination his finding at the PRTF stage that the plaintiff had experienced episodes of decompensation. *See* Statement of Errors at 22-23. In support of that point, she cites *Washington v. Shalala*, 37 F.3d 1437 (10th Cir. 1994), and *Williams v. Apfel*, 73 F. Supp.2d 1325 (M.D. Fla. 1999). *See id*. at 22.

Neither *Washington* nor *Williams* helps the plaintiff. *Washington* concerns the improper rejection by an administrative law judge of a treating physician's opinion that a claimant would suffer episodes of decompensation under the stresses of work. *See Washington*, 37 F.3d at 1440-41. *Williams* concerns the improper finding of an administrative law judge that a claimant had experienced sufficient medical improvement that her condition no longer met a mental health listing

16

and she no longer was entitled to benefits, despite substantial evidence both in her work history and from a treating physician that she continued to decompensate and could not hold a steady job or tolerate long hours. *See Williams*, 73 F. Supp.2d at 1339-41. Neither case addresses whether and to what extent a PRTF finding of decompensation must be reflected in an RFC finding. *See id*.

In any event, the plaintiff does not clarify how the finding of one to two episodes of decompensation could or should have been reflected in the mental RFC finding. *See* Statement of Errors at 22-23. That is fatal to her quest for reversal and remand on this basis.[8]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[8] The plaintiff makes no argument that any of the differences between the Lester and Sawyer mental RFC opinions are attributable to Dr. Sawyer's finding that the plaintiff had suffered one to two episodes of decompensation, *see* Statement of Errors at 22-23, thereby waiving any such point, se*e, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).